# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| _____ ) | MASTER FILE: 04 Civ. 164 (TFM) |
| In re BLACKROCK MUTUAL FUNDS ) | |
| FEE LITIGATION ) | |
| _____ ) | |

## MEMORANDUM OPINION AND ORDER

McVerry, J.

Plaintiffs allege that defendant BlackRock, Inc., and its subsidiaries and affiliates,

inappropriately used assets of BlackRock mutual funds to pay broker-dealers to market

BlackRock mutual funds over other mutual funds.  Plaintiffs seek to bring their claims as a class

action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class,

"consisting of all persons or entities who held one or more shares or like interests in any of [the]

BlackRock Funds . . . between February 4, 1999 and November 7, 2003, inclusive."

(Consolidated Amended Complaint ("Compl.") ¶ 108).  No class has yet been certified.  The

Consolidated Amended Complaint names the following parties as defendants: BlackRock, Inc

("BlackRock"); Black Rock Advisors, Inc. ("BAI") and BlackRock Financial Management, Inc.

("BFM," with BAI the "Investment Adviser Defendants"); and Black Rock Distributors, Inc.

("BDI") (collectively, "defendants").[1]

Before this court is the Defendants' Motion to Dismiss the Consolidated Amended

---

[1]  The complaint also names the BlackRock Funds as nominal defendants and names John Doe defendants 1-100, who the complaint describes as "any other wrongdoers whose identities have yet to be ascertained and which will be determined during the course of plaintiffs' counsel's ongoing investigation.

Complaint ("Motion to Dismiss").  Defendants move to dismiss all counts of the complaint.  For the reasons set forth below, the motion will be granted.

I.      **Background**

The relevant facts, as alleged by plaintiffs in the complaint, are as follows:  BlackRock, a Delaware corporation, is a publicly-traded investment management company with $294 billion of assets under management as of September 30, 2003.  Compl. ¶ 17.  BlackRock manages assets on behalf of individual and institutional investors through equity, fixed income, liquidity and alternative investment separate accounts and mutual funds, including the BlackRock funds that are the subject of this litigation.  Id.  PNC Financial Services Group, Inc. ("PNC") is a majority shareholder of BlackRock.  Id.  Defendant BlackRock Advisers, a wholly-owned subsidiary of BlackRock, is an investment adviser to the BlackRock Funds and provides management advice to the funds.  Id. at ¶ 18.  Defendant BFM, an affiliate of BlackRock Advisers (BlackRock Advisers and BFM, collectively, "Investment Adviser Defendants"), is a sub-adviser to the BlackRock Funds and is responsible for the day-to-day management of the funds.  Id. at ¶ 19.  Defendant BDI is a registered broker/dealer that has marketed and sold shares of the BlackRock Funds on a continuous basis.  Id. at ¶ 22.

Nominal defendants, the BlackRock Funds, are open-ended management companies, whose assets consist of the capital invested by shareholders of the mutual funds.  Id. at ¶ 23.   All funds have a board of trustees that is responsible for representing the interests of the shareholders of the funds.  Id.  Every BlackRock Fund has BAI and/or BFM as its investment adviser or sub-adviser, and BDI as its principal underwriter and distributor.  Id. at ¶ 25.

Plaintiffs allege that defendants used improper means to obtain a preferred marketing status at brokerage firms.  Specifically, plaintiffs allege that, during the class period, BlackRock made payments to Morgan Stanley and other brokerages and in exchange the brokerages aggressively marketed BlackRock funds to unwitting investors.  Id. at ¶ 27. Plaintiffs and defendants refer to this practice as acquiring "shelf-space."  Plaintiffs allege that defendants obtained shelf-space at the brokerages through several payment methods, including (a) "directed brokerages," the practices of directing the trades of securities and other investments of the BlackRock Funds to the brokerages; (b) "revenue-sharing," paying cash and other inducements to the brokerages; and (c) paying excessive commissions in the form of "soft dollars."  Id. at ¶ 27. Plaintiffs allege that BlackRock did not disclose the shelf-space payments to clients and that the payments created a material conflict of interest that caused brokers to direct clients to BlackRock Funds regardless of the funds' relative investment quality.  ¶ 51, 57, 85-98.

An example of a shelf-space program in which plaintiffs allege BlackRock participated was the Morgan Stanley "Partners Program."  Id. at ¶ 29.  Under the Partners Program, Morgan Stanley adopted a broker "Incentive Compensation" payout grid that provided for up to 3% greater compensation for "asset-based products" over "transaction-based products."  Id. at ¶ 32. Morgan Stanley classified Partners Program funds, including BlackRock, as "asset-based products."  In exchange for these additional payouts, Morgan Stanley provided BlackRock Funds, and other Partners Program funds, with priority placement in the review of fund materials that were distributed to Morgan Stanley brokers; gave BlackRock access to Morgan Stanley's branch system at the branch managers discretion; gave BlackRock access to Morgan Stanley brokers; included BlackRock in Morgan Stanley broker events and invited BlackRock to

participate in programs broadcast to brokers over Morgan Stanley's internal systems. ¶ 35.  The

Morgan Stanley Partners Program was the subject of a Securities and Exchange Commission

("SEC") investigation and Morgan Stanley has since been censured by the SEC and the National

Association of Securities Dealers, Inc. (the "NASD") and has agreed to $50 million in fines.  ¶

43.

Plaintiffs allege that BlackRock paid excessive brokerage commissions and

inappropriately directed brokerage business to broker-dealers in violation of section 12 of

Chapter 2d - Investment Companies and Advisers ("ICA"), 15 U.S.C. §80a-12, because the

payments were not made pursuant to a valid SEC Rule 12b-1 plan, 17 C.F.R. § 270.12b-1. ¶ 52-

53, 64-72.  Rule 12b-1 prohibits mutual funds from directly or indirectly distributing or

marketing their own shares unless the funds meet certain conditions.  See 17 C.F.R. § 270.12b-1.

For example, Rule 12b-1 provides that payments for marketing must be made pursuant to a

written plan "describing all material aspects of the proposed financing of distribution."  Id. at

270.12b-1(b).

Rule 12b-1 further provides that a registered open-end management company "may

implement or continue a plan pursuant to paragraph (b) . . . only if the board of directors who

vote to approve such implementation or continuation conclude, in the exercise of reasonable

business judgment, and in light of their fiduciary duties under state law and section 36(a) and (b)

of the [ICA] that there is a reasonable likelihood that the plan will benefit the company and its

shareholders." Id. at 270.12b-1(e).  Plaintiffs argue that there was not a "reasonable likelihood"

that the plan would benefit the shareholders.  Compl. at ¶ 68.  Specifically, plaintiffs argue that

"the BlackRock Funds['] marketing efforts were creating diminished marginal returns under

circumstances where increased fund size correlated with reduced liquidity and fund performance." Id. at ¶ 68.

Plaintiffs further allege that the Investment Adviser defendants exceeded the "safe harbor" provision of section 28(e) of the Securities and Exchange Act, 15 U.S.C. § 78bb(e), when they paid excessive commissions in the form of "soft dollars." Section 28(e)'s "safe harbor" provision carves out an exception to the general rule that financial advisers have a fiduciary duty to their clients to obtain the best possible execution price for their trades. 15 U.S.C. § 78bb(e). Section 28(e) allows an investment adviser to cause an account to pay a broker an amount of commission for effecting a securities transaction in excess of the commission another broker might have charged, as long as the adviser "determined in good faith that such amount of commission was reasonable in relation to the value of the brokerage and research services provided by such . . . broker . . . viewed in terms of either that particular transaction or his overall responsibilities with respect to the accounts as to which he exercises investment discretion." 15 U.S.C. § 78bb(e)(1). The commission amounts that brokerages charge investment advisers in excess of the purchase and sales charges are known as "soft dollars." ¶ 58. Plaintiffs allege that BlackRock "far exceeded the bounds of the Section 28(e) safe harbor by making payments in the guise of Soft Dollars to pay overhead costs." ¶ 61.

II.  Standard of Review

The court will dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003)

(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  In considering a motion to dismiss for

failure to state a clam upon which relief can be granted, the court is required to accept as true all

allegations in the complaint and all reasonable inferences that can be drawn from them after

construing them in the light most favorable to the non-movant.  Jordan v. Fox, Rothschild,

O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994) (citing Rocks v. City of Philadelphia, 868

F.2d 644, 645 (3d Cir.1989)).  A court need not, however, "accept as true unsupported

conclusions and unwarranted inferences." Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d

173,183-84 (internal quotations and citations omitted).

    In their Consolidated Amended Complaint, plaintiffs state nine causes of action against

defendants under the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-1 et seq; the

Investment Advisers Act of 1940 ("IAA"), 15 U.S.C. § 80b-1 et seq.; the Pennsylvania Unfair

Trade Practices and Consumer Protection Law ("PUTP" and "CPL"), 73 P.S. § 201-1 et seq.; and

state common law for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and

unjust enrichment.  Plaintiffs assert eight direct claims: (1) against the Investment Adviser

Defendants for violating of section 34(b) of the ICA, 15 U.S.C. § 80a-33(b); (2) against the

Investment Adviser Defendants and BDI for violating section 36(a) of the ICA, 15 U.S.C. § 80a-

35(a); (3) against the Investment Adviser Defendants and BDI for violating section 36(b) of the

ICA, 15 U.S.C. § 80a-35(b); (4) against BlackRock, as a "control person" of BDI , for violating

section 48(a) of the ICA, 15 U.S.C. § 80a-47(a); (5) a state law claim against Black Rock, the

Investment Adviser Defendants and BDI for violating the CPL; (6) a common law claim against

the Investment Adviser Defendants for breach of fiduciary duty; (7) a common law claim against

all defendants for aiding and abetting a breach of fiduciary duty; and (8) a common law claim

6

against all defendants for unjust enrichment.  Plaintiffs also state a derivative claim on behalf of

the BlackRock Funds against the Investment Adviser Defendants under section 215 of the

IAA,15 U.S.C. § 80b-6.

III. Discussion

A.    Whether there is an implied private right of action under sections 34(b), 36(a) and 48(a)
      of the ICA (Counts I, II and IV)

        In Count I, plaintiffs assert a claim on behalf of the class alleging that defendants violated

section 34(b) of the ICA by making materially false and misleading statements in registration

reports and prospectuses.  In Count II, plaintiffs allege, again on behalf of the class, that

defendants violated section 36(a) of ICA by breaching its fiduciary duty to the class.  In Count

IV, plaintiffs allege, also on behalf of the class, that defendant BlackRock, as a "control person"

of defendant BDI, caused BDI to commit violations of sections 36(a) and 36(b) of the ICA in

violation of section 48(a) of the ICA.[2]

        Sections 34(b), 36(a) and 48(a) do not explicitly provide for a private right of action.[3]

---

        [2]  The parties do not address in their briefs whether section 48(a) provides for a private
right of action.  The Court is required to address this issue sua sponte, however, because it
concerns whether or not the plaintiffs have standing to bring a claim under section 48(a).  See
Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 405 (3d Cir. 2005) (noting
that "we are required to raise issues of standing sua sponte if such issues exist") (internal
citations and quotations ommitted).

        [3]  Section 34(b) of the ICA provides:

            It shall be unlawful for any person to make any untrue statement of a material fact
            in any registration statement, application, report, account, record, or other
            document filed or transmitted pursuant to this subchapter or the keeping of which
            is required pursuant to section 80a-30(a) of this title. It shall be unlawful for any

person so filing, transmitting, or keeping any such document to omit to state therein any fact necessary in order to prevent the statements made therein, in the light of the circumstances under which they were made, from being materially misleading. For the purposes of this subsection, any part of any such document which is signed or certified by an accountant or auditor in his capacity as such shall be deemed to be made, filed, transmitted, or kept by such accountant or auditor, as well as by the person filing, transmitting, or keeping the complete document.

15 U.S.C. § 80a-33(b)

Section 36(a) of the ICA provides:

The [SEC] is authorized to bring an action in the proper district court of the United States, or in the United States court of any territory or other place subject to the jurisdiction of the United States, alleging that a person serving or acting in one or more of the following capacities has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts-

(1) as officer, director, member of any advisory board, investment adviser, or depositor; or

(2) as principal underwriter, if such registered company is an open-end company, unit investment trust, or face-amount certificate company.

If such allegations are established, the court may enjoin such persons from acting in any or all such capacities either permanently or temporarily and award such injunctive or other relief against such person as may be reasonable and appropriate in the circumstances, having due regard to the protection of investors and to the effectuation of the policies declared in section 80a-1(b) of this title.

15 U.S.C. § 80a-35(a).

Section 48(a) of the ICA provides:

It shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this subchapter or any rule, regulation, or order thereunder.

8

Absent any explicit provision for a private right of action, plaintiffs may bring claims only if Congress clearly intended to create a private right of action.  See Alexander v. Sandoval, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.")

A statute may create an implied private right of action only if it indicates that Congress intended to create both a private right and a private remedy under the statute.  Gonzaga Univ. v. Doe, 536 U.S. 273, 283-84 (2002), Alexander, 532 U.S. at 286; Bonano v. East Caribbean Airline Corp., 365 F.3d 81, 84 (1st Cir. 2004).  In determining whether Congress intended to create a private right of action under a statute, a court must begin with the text and structure of the statute.  Sandoval, 532 U.S. at 288.  A private right of action may be inferred by "rights-creating" language.  Gonzaga Univ., 536 U.S. at 283-84; Sandoval, 532 U.S. at 288-89.  Where Congress has created a method of enforcing substantive rules, it may be inferred that Congress did not intend to provide other methods of enforcement.  Sandoval, 532 U.S. at 290; Bonano, 365 F.3d at 85.  Further, "Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional."  Olmsted v. Pruco Life Insurance Co., 283 F.3d 429 (2d Cir. 2002).

Sections 34(b), 36(a) and 48(a) do not contain private rights creating language.  Section 42 of the ICA, 15 U.S.C. § 80a-41, provides a method for the SEC to enforce all provisions of the ICA, thus implying that Congress did not wish to provide for other modes of enforcement.  Section 36(a) specifically authorizes the SEC, not shareholders, to take enforcement action.

---

15 U.S.C.A. § 80a-47(a).

Further, the fact that section 36(b) of the ICA specifically provides for a private action implies that Congress did not wish to provide for private enforcement of other sections of the ICA. There is no evidence that Congress intended to create a private right of action under sections 34(b), 36(a) and 48(a) and several other courts that have considered the issue have reached the same conclusion.[4]

Plaintiffs argue that sections 34(b) and 36(a) imply private rights of action because they are "for the protection of investors." Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss ("Pl. Br.") at 40. This argument is not persuasive. For a statute to create an implied private right of action, the text "must be 'phrased in terms of the persons benefitted.'" Gonzaga Univ., 536 U.S. at 283 (quoting Cannon v. University of Chicago, 441 U.S. 677, 692, n. 13 (1979)). If a statute focuses on the person regulated, rather than the individuals protected, it does not create any "implication of an intent to confer rights on a particular class of persons." Alexander, 532 U.S. at 289 (quoting California v. Sierra Club, 451 U.S. 287, 294 (1981)).

Section 34(b) does not specifically mention that it is "for the protection of investors." Section 34(b) cross-references section 31(a), 15 U.S.C. § 80a-30(a), which provides that companies must maintain and preserve such records as the SEC "may prescribe as necessary or

---

[4]See Forsythe v. Sun Life Financial, Inc. 2006 WL 148935, *2-4 (D.Mass. Jan 19, 2006) (holding that 34(b), 36(a) and 48(a) do not provide for a private right of action); In re Davis Selected Mut. Funds Litig., Civ. No. 04- 4186(MGC), 2005 WL 2509732, at *2 (S.D.N.Y Oct. 11, 2005) (same); In re Dreyfus Mut.Funds Fee Litig, Master File No. 04-0128, slip op., at 12-14 (W.D.Pa. Sept. 30, 2005) (holding that sections 34(b) and 36(a) do not provide for a private right of action); In re Franklin Mut. Funds Fee Litig., 388 F.Supp.2d 451, 464-68 (D.N.J. 2005) (same and dismissing section 48(a) claim on other grounds); In re Eaton Vance Mut. Funds Fee Litig., 380 F.Supp.2d 222, 229-33 (S.D.N.Y. 2005) (holding that 34(b), 36(a) and 48(a) do not provide for a private right of action).

appropriate in the public interest or for the protection of investors." <u>Id.</u>  Section 31(a) is clearly

phrased in terms of the persons regulated.  The phrase "for the protection of investors" applies to

the SEC's duties with respect to creating the retention policies that are the subject of section

31(a).  Neither section 34(b) nor 31(a) is clearly phrased in terms of the persons benefitted.  <u>See In

re Dreyfus Mut. Funds Fee Litig.</u>, Master File No. 04-0128, slip op. 2005 U.S. Dist. LEXIS 29152

at *23 (W.D. Pa. Sept. 30, 2005) (concluding that section 34(b) does not confer a private right of

action because "a cross-reference to another statute that happens to mention the phrase 'for the

protection of investors' is not enough to transform an unambiguous 'person regulated' section into

a 'person benefitted' section").  Section 34(b) does not imply a private right of action.

Section 36(a) also does not imply a private right of action.  Section 36(a) specifically

provides, "The Commission is authorized to bring an action . . ." for breach of fiduciary duty.  In

the event that allegations of a breach of fiduciary duty are established, section 36(a) provides that

"the court may enjoin such persons from acting in any or all such capacities either permanently or

temporarily and award such injunctive or other relief against such person as may be reasonable

and appropriate in the circumstances, having due regard to the protection of investors . . . ."  The

statute specifically provides for enforcement by the SEC and though it does mention investors, it

clearly is not phrased in terms of the persons benefitted.

Section 48(a) certainly is not phrased in terms of the person benefitted.  In fact, section

48(a) does not even mention investors and thus there is not an implicit private right of action

under section 48(a).

Counts I, II and IV of Plaintiff's Complaint will be dismissed because plaintiffs, as private

parties, do not have standing to bring claims under sections 34(b), 36(a) and 48(a).

11

B. <u>Whether Plaintiffs' claims under sections 34(b) and 36(a) of the ICA and for unjust enrichment and breach of fiduciary duty are improperly pled as direct claims (Counts I, II, VII and IX)</u>

Counts I and II are brought pursuant to the ICA. Therefore, in determining whether the claims are properly brought as derivative or direct, the court looks to the law of the state in which the investment company is incorporated. <u>See</u> <u>Kamen v. Kemper Fin. Servs., Inc.</u>, 500 U.S. 90, 108-09 (1991). Here, the BlackRock Funds are organized under Massachusetts law, and thus this Court looks to Massachusetts law.  The parties do not dispute that Massachusetts law should be applied to determine whether Count VII, the breach of fiduciary duty claim, should be brought as a derivative action, and thus this court should apply Massachusetts law to that claim.  <u>See</u> <u>Jacobs Constructors, Inc. v. NPS Energy Services, Inc.</u>, 264 F.3d 365, 369 (3d Cir. 2001) (holding that court should apply substantive law of a state where the parties do not dispute that it applies).

The parties do appear to disagree, however, over what law should be applied to determine whether plaintiffs' unjust enrichment claim should be brought as a derivative claim.  Defendants do not argue what law should apply to this issue, but do premise their argument that plaintiffs' unjust enrichment claim is not a direct action under Pennsylvania law.  (Defendants Brief in Support of Motion to Dismiss the Consolidated Amended Complaint ("Def. Br.") 14.)  Plaintiffs also do not address what law should apply to determine whether their unjust enrichment claim should have been brought as a direct action, nor do plaintiffs even argue in their brief that the unjust enrichment claim could be construed as a direct action.  (Pl. Br. 16-23) (arguing that all of plaintiffs claims, except the IAA claim, are direct in nature, but not specifically addressing the unjust enrichment claim).  The Court need not determine whether Pennsylvania or Massachusetts law applies to the unjust enrichment claim, however, because the plaintiffs lack standing to bring

12

a direct claim under either state's law.

Under Massachusetts law, shareholders may not bring a direct suit unless they allege an injury distinct from that suffered by shareholders generally.  See Jackson v. Stuhlfire, 547 N.E.2d 1146, 1148 (Mass.App.Ct.1990).  See also, Lapidus v. Hecht, 232 F.3d 679, 683 (9th Cir.2000) (holding that under Massachusetts law, a shareholder may only bring a direct suit if the shareholder has suffered "an injury distinct from that suffered by shareholders generally or a wrong involving one of his or her contractual rights as a shareholder, such as the right to vote"); Green v. Nuveen Advisory Corp., 186 F.R.D. 486, 489 (N.D.Ill.1999) ("To determine whether a claim belongs to the corporation, a court must inquire whether the shareholder's injury is distinct from the injury suffered generally by the shareholders as owners of corporate stock.") (applying Massachusetts law).  If the wrong underlying the claim adversely affects the plaintiffs "merely as they are the owners of the corporate stock," then the injury to the shareholder is considered indirect, and the suit must be brought as a derivative action because "only the corporation itself suffers the direct wrong."  Jackson, 547 N.E.2d at 1148 (quoting Smith & Zobel, Massachusetts Rules Practice § 23.1.1 (1975)).

Pennsylvania law is substantially the same. When fraud, mismanagement, or other wrongs by corporate management damage a corporation's assets, a shareholder does not have a direct cause of action.  Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 348 (3d Cir. 2001) (citing Burdon v. Erskine, 401 A.2d 369, 370-71 (Pa. Super. 1979)). As the corporate body that suffers the primary wrong, the corporate body, and only the corporate body, possesses the right to sue.  Id. (citing John L. Motley Assoc., Inc. v. Rumbaugh, 104 B.R. 683, 686-87 (E.D.Pa.1989)). See also 15 Pa.C.S.A. § 1717 ("The duty of the board of directors,

committees of the board and individual directors under section 1712 (relating to standard of care and justifiable reliance) is solely to the business corporation and may be enforced directly by the corporation or may be enforced by a shareholder, as such, by an action in the right of the corporation, and may not be enforced directly by a shareholder or by any other person or group.")

Plaintiffs do not allege that they suffered an injury that is distinct from injuries suffered by shareholders generally. Plaintiffs allege that they suffered the following injuries: (1) the loss of "excessive commissions" that were paid to broker dealers with "investor assets" under the "guise of soft dollars"; (2) loss of assets through "revenue sharing" in violation of 12b-1; and (3) loss of "directed brokerage payments" to brokerage firms. (Compl. ¶ 29, 52, 67-74, 118, 125, 167). The plaintiffs do not allege that they paid any of these fees individually. Thus, the plaintiffs were only affected indirectly as shareholders of the fund. The fact that BlackRock funds' assets ultimately belonged to the plaintiffs "does not render depletion of those assets injury suffered by shareholders that is distinct from injury suffered by the funds." In re Lord Abbett Mut. Funds Fee Litig., 407 F.Supp. 2d 616, 626 (D.N.J.2005) (applying Massachusetts law).

Plaintiffs have not demonstrated any injury distinct from an injury to corporate assets. Plaintiffs' arguments to the contrary are not persuasive. First, plaintiffs argue that they properly bring these claims as direct claims because they "allege that they were wrongfully induced to hold their investments in BlackRock Funds." (Pl. Br. 18-19.) In support of this argument, plaintiffs cite only Blasberg v. Oxbow Power Corp., 934 F. Supp. 21 (D. Mass. 1996). In Blasberg, however, the court clearly recognized that "if a plaintiff alleges mismanagement of funds . . . or breach of fiduciary duty resulting in a diminution of the value of the corporate stock

14

or assets, the claim is one held by the corporation itself. . . ." Id. at 26.  Plaintiffs erroneously

rely on the Blasberg court's statement that "if a plaintiff alleges that she, as an individual

investor, was misled or defrauded in the purchase of her investment, this kind of claim is a

'direct' one," a statement that clearly refers to a injury to an individual investor that resulted from

a fraud perpetrated specifically against her, not the entire class of investors.

Second, plaintiffs argue that excessive fees "directly increased costs to the class," thus

causing a direct injury. (Pl. Br.  21.)  Specifically, plaintiffs alleged that they suffered a direct

injury because the "value of an investor's mutual fund is determined by subtracting a fund's

liabilities from its assets to arrive at the fund's NAV" and the "excessive fees and charges about

which Plaintiffs complain immediately reduced the Funds' NAV per share." Id.  As the Court of

Appeals for the Third Circuit recognized in Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727 (3d

Cir. 1970), however, "That the worth of a share of [a shareholder]'s stock is directly

proportionate to the value of a mutual fund's net assets is insufficient to destroy these separate

identities [of shareholder an corporation]." Id. at 733.  The court went on to explain that there

was not any legal support for the proposition that "the ease and capacity of evaluating a

shareholder's redemptive value of mutual fund shares can vest in him a pro-rata share of the

corporation's primary right to sue." Id.

Third, plaintiffs argue that their state common law breach of fiduciary duty claim is a

direct claim because the plaintiffs assert that the defendants violated fiduciary duties owed

directly to the shareholders. ( Pl. Br. 19.)  Plaintiffs argue that their claim is direct because, under

section 36 of the ICA, "the entities named as Defendants in this action have a fiduciary duty to

registered investment companies and the security holders thereof."  (Pl. Br. 20.)  Plaintiffs' claim

for breach of fiduciary duty under state common law, however, is clearly distinguishable from a breach of a statutorily-created duty under the ICA.  See Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 227 n.16 (3d Cir. 2001) (distinguishing section 36(b) claims by noting that "[a]t common law, the shareholder's suit for breach of fiduciary duty is a derivative suit; the shareholder's right to bring suit is derived from the corporation's right to bring suit").

Under Massachusetts common law, fiduciary duties regarding the management of corporate funds runs to the corporation, not the shareholders.  See, e.g., Cigal v. Leader Dev. Corp., 557 N.E.2d 1119, 1123 (Mass. 1990) (holding that plaintiff's claim of breach of fiduciary duty ran to corporation/association where plaintiffs' claims involve allegations that the defendants breached their fiduciary duties through mismanagement and nonfeasance); Bessette v. Bessette 434 N.E.2d 206, 208 (Mass. 1982) (holding that "the right to recover the overpayments [to a majority stockholder] belongs to the corporation. . ." and thus the "fiduciary duty on which the plaintiffs base their claim is a duty owed to the corporation, not to individual stockholders"). Plaintiffs have not cited any cases that have held that a fiduciary duty runs directly to shareholders under Massachusetts common law.[5]

Finally, plaintiffs allege that the direct claims must be allowed to proceed because a derivative claim would not adequately address plaintiffs' injuries.  (Pl. Br. 23.)  Specifically, plaintiffs argue that "[s]hareholders who held during the Class Period of wrongdoing but

---

[5] Plaintiffs claim that Cigal "plainly suggests that where a shareholder suffers 'actual pecuniary loss,' a direct cause of action will lie." (Pl. Br. 19 n.20.)  Cigal, however, discussed the failure to allege actual pecuniary loss only as it applied to dismissing the claim as speculative, not as to whether the plaintiffs could bring a direct claim for breach of fiduciary duty. See Cigal, 557 N.E.2d at 1123.

subsequently sold would not have their interests vindicated by a derivative recovery." Id. Applying Massachusetts law, the District Court of Massachusetts rejected a legally and factually indistinguishable claim, reasoning that "such a result occurs in all derivative actions, where it is the fund that benefits directly from any remedy (because it was the fund that was injured directly), not the individual shareholders. Present shareholders find the value of their shares proportionately increased by a damage recovery by the fund; past shareholders, who have become present non-shareholders, do not." Forsythe v. Sun Life Financial, Inc., __ F.Supp.2d __, 2006 WL 148935, *14 (D. Mass. Jan. 19, 2006) (citing Ross v. Bernhard, 396 U.S. 531, 538-39 (1970)).

Counts I, II, IV, VII and IX have been inappropriately pled as direct claims.  Accordingly, Counts I, II, IV, VII and IX will be dismissed as they are not properly brought as direct claims. Even if Counts I, II, IV, VII and IX were brought as derivative claims, they would all be subject to the demand requirement of Fed.R.Civ.P. 23.1.  For the reasons discussed below regarding the IAA claim in Count V, the plaintiffs have failed to comply with Rule 23.1 because they failed either to make the demand required by that rule or to allege adequately the futility of such demand.

C.      Whether plaintiffs' claim under section 36(b) of the ICA is improperly pled as a direct claim

Count III asserts claims directly against the Investment Adviser Defendants and BDI for breach of fiduciary duties under section 36(b) of the ICA. 15 U.S.C. § 80a-35(b).  Section 36(b) provides, in relevant part, "An action may be brought under this subsection . . . by a security holder of such registered investment company on behalf of such company . . . ."15 U.S.C. § 80a-

35(b) (emphasis added).  Section 36(b) clearly provides for a private right to bring a derivative action, not a private right to bring a direct action, and thus plaintiffs' 36(b) claim is improperly pled as a direct claim of a security holder.

In <u>Daily Income Fund, Inc. v. Fox</u>, 464 U.S. 523 (1984), the Supreme Court first addressed the "on behalf of"language in section 36(b). The Court explained that the "on behalf of" phrase means that the "right asserted by a shareholder suing under the statute is a 'right of the corporation.' . . . A § 36(b) action is undeniably 'derivative' in the broad sense of the word." <u>Fox</u>, 464 U.S. 523, 535 n.11.  The Court did distinguish a derivative claim under 36(b) from a typical derivative claim, but only to explain why the demand requirement of Federal Rule of Civil Procedure 23.1 did not apply to a derivative claim under section 36(b).  The Court recognized that  "Congress intended the perhaps unique 'right of a corporation' established by § 36(b) to be asserted by the company's security holders and <u>not by the company itself</u>," and thus concluded that a party bringing a claim under section 36(b) was not bringing a claim where a corporation "'failed to enforce a right which may properly be asserted by it.'" <u>Id.</u> (quoting Fed. R. Civ. P. 23.1) (emphasis added).

There has been some confusion over whether section 36(b) provides a derivative or direct private right of action because the Supreme Court in <u>Kamen v. Kemper Financial Services, Inc.</u>, 500 U.S. 90 (1991), referred in dicta to "our conclusion in <u>Fox</u> that a shareholder action 'on behalf of' the company under § 36(b) is <u>direct rather than derivative</u> and can therefore be maintained without <u>any</u> precomplaint demand on the directors." 500 U.S. at 108 (first emphasis added).  In the very next sentence of the opinion, however, the Court added, "Under these circumstances, it can hardly be maintained that a shareholder's exercise of his state-created

prerogative to initiate a <u>derivative suit</u> without the consent of the directors frustrates the broader policy objectives of the ICA." <u>Kamen</u>, 500 U.S. at 108 (emphasis added). <u>Fox</u> did not hold that a claim under section 36(b) was a direct claim and, as cited above, concluded that a claim under section 36(b) was in fact derivative.  Read in context, the dicta in <u>Kamen</u> stands only for the proposition that a shareholder may bring a derivative claim under section 36(b) without making a pre-complaint demand. However, such a suit remains a "derivative" action brought on behalf of the corporation.

An action under section 36(b) is not subject to the Rule 23.1 demand requirement that applies to most derivative actions.  Nonetheless, a claim under section 36(b) is a derivative action and must be pled as a derivative action.  Several other courts have reached the same conclusion. <u>See</u> <u>Olmsted</u>, 283 F.3d at 433 (noting section 36(b) is a "private right of derivative action"); <u>In re American Mut. Funds Fee Litig.</u>, No. CV 04-5593, slip op. (C.D. Cal. Dec. 16, 2005); <u>In re Lord Abbett Mutual Funds Fee Litig.</u>, 407 F.Supp.2d at 632 (holding that "plaintiffs' Section 36(b) claim must be pleaded as a derivative (not a direct) claim"); <u>In re Franklin Mutual Funds Fee Litig.</u>, 388 F.Supp.2d at 468 (dismissing claim because "§ 36(b) does not provide for a direct private right of action"); <u>Mutchka v. Harris</u>, 373 F.Supp.2d 1021, 1025 (C.D.Cal.2005) (holding that the section 36(b) claim "must fail because it has not been brought derivatively").

<u>Forsythe</u>, which plaintiffs cite in support of their 36(b) claim,[6] clearly recognized that

---

[6] The plaintiffs in <u>Forsythe</u> did plead their section 36(b) claim as a direct claim. ___ F.2d at ___, 2006 WL 148935 at *1.  The court found that the 36(b) claim complied with Federal Rule of Civil Procedure 8 and did not dismiss the claim in its entirety, but did not address the issue of whether the complaint should have been pled derivatively instead of directly**.** Likewise, in <u>In re Oppenheimer Funds Fees Litigation</u>, ___ F.2d ___, 2006 WL 592881 (S.D.N.Y. March 10, 2006), the court did not dismiss a directly pled section 36(b) claim, but also did not address whether the claim should have been pled as a derivative claim.  As these cases do not discuss

36(b) confers a private right to bring a derivative claim. ___ F.2d at ___, 2006 WL 148935 at

*12. The court in Forsythe explained that a section 36(b) action "is a "derivative" cause of action

because it is brought "on behalf of" an investment company to vindicate the rights of the

investment company and any recovery flows to the investment company, not the shareholder

plaintiff." Id. at (citing Fox, 464 U.S. at 535 n. 11).  Forsythe further explained that the "Supreme

Court made clear in [Fox] that the shareholder suing under § 36(b) sues on behalf of a fund,

though not in substitution for the fund." Id.

Plaintiffs inappropriately pled Count III as a direct claim.[7]  The claim will be dismissed

without prejudice and plaintiffs will be granted leave to amend Count III.

D.       Whether plaintiffs can state a claim under IAA section 215

Count V alleges that, pursuant to section 215 of the IAA, 15 U.S.C. § 80b-15, the

investment adviser defendants violated section 206 of the IAA, 15 U.S.C. § 80b-6, by charging

_____

whether or not a 36(b) claim must be pled derivatively, they are not persuasive on the issue.


[7] The Court need not address at this stage whether plaintiffs may assert a claim on behalf of those funds in which they do not own shares.  See In re Lord Abbott Mutual Funds Fee Litig., 407 F.Supp at 625 (holding that "plaintiffs lack of ownership interest [in some of the funds] does not warrant dismissal of any claims at this time" where plaintiffs had not yet repled their section 36(b) claims derivatively).  Should plaintiffs replead Count III, however, relevant caselaw supports the conclusion that plaintiffs may not brings claims derivatively on behalf of funds in which they do not have an ownership interest.  See, e.g., id. (noting that if plaintiffs repled their section 36(b) claim as a derivative claim, "Haas[ v. Pittsburgh National Bank, 526 F.2d 1083 (3d Cir. 1975)] would not allows Plaintiffs to bring Section 36(b) claims derivatively on behalf of funds in which they have no ownership interest"), Green v. Nuveen Advisory Corp., 186 F.R.D. 486, 493 (N.D.Ill. 1999) (holding that "[p]ursuant to 15 U.S.C. § 80a-35(b), plaintiffs do not have standing to bring a § 36(b) claim on behalf of investment companies other than the funds in which they are security holders").

improper Rule 12b-1 marketing fees and making improper payments to brokerage firms, including excessive commissions, soft dollars, and directed brokerage. (Compl. ¶¶ 142-49.) Plaintiffs bring this claim derivatively on behalf of the mutual funds.  Plaintiffs' section 215 claim will be dismissed because plaintiffs did not make a demand on the Trustees and failed to demonstrate that doing so would have been futile as required by Federal Rule of Civil Procedure 23.1.

IAA section 215 provides that contracts that on their face or by their performance violate other provisions of the IAA are void.  See 15 U.S.C. § 80b-15(b) ("Every contract made in violation of any provision of this subchapter . . ., [or] the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this subchapter, or any rule, regulation, or order thereunder, shall be void.")   The other provision allegedly violated by BlackRock's contracts (as a result of its broker compensation practices) is IAA section 206, 15 U.S.C. § 80b-6, which makes it unlawful "to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative." Id.

Defendants argue that plaintiffs fail to state a claim under section 215 because plaintiffs have failed to comply with Rule 23.1 of the Federal Rules of Civil Procedure.  Rule 23.1 governs shareholder derivative actions[8] and requires that a complaint for a derivative action "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort."

---

[8]  The plaintiffs do not dispute that the IAA claim is a derivative action.  See Compl. ¶ 142-49; Pl. Br. 58-59.

Fed.R.Civ.P. 23.1.  The demand requirements for a derivative suit are determined by the law of the state of incorporation.  See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 98-101 (1991) (holding that the substantive corporation law of the state of incorporation determines whether or not a party has met Rule 23.1's demand requirements).

Massachusetts requires that a plaintiff "must establish that . . . all available means to obtain relief through the corporation itself are exhausted by making demand on the corporation's board of directors to prosecute the litigation." See Harhen v. Brown, 431 Mass. 838, 730 N.E.2d 859, 865 (2000) (internal citation omitted).[9]  The demand requirement will be excused as futile only "if a majority of directors are alleged to have participated in wrongdoing, or are otherwise interested." Id.   See also In re Eaton Vance Mut. Funds Fee Litig. 380 F.Supp.2d 222, 239 (S.D.N.Y. 2005);  Cote v. Levine, 52 Mass.App.Ct. 435, 754 N.E.2d 127, 131-32 (2001).  A trustee of a Massachusetts business trust registered under the ICA is "deemed to be independent and disinterested when making any determination or taking any action as a trustee" unless that person is an "interested person" as defined in the ICA. Mass. Gen. Laws ch. 182. § 2B.

A trustee is an "interested" person if the trustee is an "affiliated person," defined as a person "controlled by" by the investment adviser. 15 U.S.C. § 80a-2(a)(3), (19). The ICA defines "control" as "the power to exercise a controlling influence over the management or policies of a

_____

[9] On July 1, 2004, Massachusetts General Laws chapter 156D, section 7.42 took effect. Section 7.42 provides, in relevant part, "No shareholder may commence a derivative proceeding until: (1) a written demand has been made upon the corporation to take suitable action."  There is not a demand futility exception to section 7.42.  See ING Principal Protection Funds Derivative Litig., 369 F.Supp.2d 163, 170 (D.Mass. 2005).  Section 7.42 does not apply to the present action, however, because plaintiffs filed the initial complaint in the present action on February 5, 2004, almost five months before section 7.42 became effective.

company, unless such power is solely the result of an official position with such company," and provides that, "[a] natural person shall be presumed not to be a controlled person within the meaning of this subchapter." 15 U.S.C. § 80a-2(a)(9).

Finally, to show that demand would have been futile under Massachusetts law, the plaintiffs "must allege with particularity that a majority of the trustees were 'interested' within the ICA definition." Forsythe v. Sun Life Financial, Inc., __ F.Supp.2d __, 2006 WL 148935, *5 (D.Mass Jan. 19, 2006).  See also In re Eaton Vance Mut. Funds Fee Litig., 380 F.Supp.2d at 239; ING Principal Protection Funds Derivative Litig., 369 F.Supp.2d 163, 171-72 (D.Mass. 2005).

Plaintiffs allegations are not sufficient to excuse the demand requirement under Massachusetts law.  Plaintiffs do not even allege the specific number of board members and thus it is impossible to determine whether a majority of some undefined number of board members were "interested persons" unless plaintiffs alleged with particularity that all of the members of the Board were interested persons.  Thus, plaintiffs' claims that certain named Trustees "control[] dozens of BlackRock Funds" (Compl. ¶ 102) or have family relationships with PNC employees (Compl. ¶ 103) cannot possibly be sufficient to establish that the majority of Trustees were "interested persons."

Plaintiffs arguments that all of the Trustees were interested persons are not sufficient to excuse the demand requirement.  First, Plaintiffs allege that  all of the Trustees are interested persons because they were "appointed by, and serve at the pleasure of the Investment Adviser Defendants" and thus were "beholden to the Investment Adviser Defendants for [their] positions and substantial compensation as trustees." (Compl.¶ 100).  The allegation that the Trustees serve indefinite terms and are appointed by the Investment Adviser Defendants does not, without

additional evidence, support the conclusion that the Trustees serve "at the pleasure of" of the

Investment Adviser Defendants, particularly because the shareholders retain the right to vote out

a trustee. See Forsythe, __ F.Supp.2d at __, 2006 WL 148935 at *6.  Further, "board membership

by itself does not warrant a conclusion that the trustee is 'interested,' even though the trustee is

well compensated and was appointed by the defendant." Id. (citing Demoulas v. Demoulas

Super Markets, Inc., Civ. No. 033741BLS, 2004 WL 1895052, at *15 (Mass. Super. Aug. 2,

2004)).  See also In re Kauffman Mut. Fund Actions, 479 F.2d 257, 265 (1st Cir.1973) ("Where

mere approval of the corporate action, absent self-interest or other indication of bias, is the sole

basis for establishing the directors' 'wrongdoing' and hence for excusing demand on them,

plaintiff's suit should ordinarily be dismissed.");  In re Eaton Vance Mut. Funds, 380 F.Supp.2d

at 240; In re AllianceBernstein Mut. Fund Excessive Fee Litig., Civ. No. 4885 (SWK), 2005 WL

2677753, at *8 (S.D.N.Y. Oct. 19, 2005).  Further, under Massachusetts law, receipt of "usual

and customary director's fees and benefits" does not render a director interested. See Harhen, 730

N.E.2d at 864 n. 5.

Second, plaintiffs allege, "Because of their lack of independence from the Investment

Adviser Defendants, the Trustees wrongfully approved the advisor fees, 12b-1 fees and the

materially misleading disclosures in the Funds Prospectuses. . . ." (Compl. ¶ 101.)  Mere

allegations that Trustees approved allegedly wrongful transactions, however, are not enough to

establish interestedness "without further interest of bias or self interest on the part of the

trustees." Forsythe, __ F.Supp.2d at __, 2006 WL 148935 at *7 (citing Grossman, 674 F.2d at

124-25; ING Principal Protection Funds Derivative Litig., 369 F.Supp.2d at 72.  Plaintiffs have

not specifically alleged that any of the Trustees acted with bias or self-interest in approving any

24

of the allegedly wrongful transactions.

Third, plaintiffs' allegation that all of the trustees have "benefitted from the wrongdoing herein alleged and ha[ve] engaged in such conduct to preserve [their] positions of control and the benefits thereof," (Compl. ¶ 104), is not supported by any particularized factual allegation.

Finally, plaintiffs allege that the Trustees are "interested persons" because in order to bring an action for breach of fiduciary duty they "would be required to implicate themselves and their fellow Trustees with whom they have had close business and personal relationships for years." Id. at ¶ 107. The possibility of personal liability for having approved allegedly improper transactions is not sufficient to excuse the demand requirement. See Heit v. Baird, 567 F.2d 1157, 1162 (1st Cir.1977); In re Eaton Vance Mut. Funds Fee Litig., 380 F.Supp.2d at 240.

The plaintiffs have failed to plead with particularity that the majority of the board of trustees was "interested" and have not provided any other reason why the demand requirement of Rule 23.1 should be excused.   As the plaintiffs do not deny that they have not made demand on the boards of trustees, their failure to allege with particularity that demand would be futile requires that their derivative claim under the IAA set forth in Count V be dismissed. See Fed.R.Civ.P. 23.1.

D.     Whether SLUSA preempts Plaintiffs' State Law Claims (Counts VI, VII, VIII, IX)

Plaintiffs' state law claims, Counts VI-IX[10], will be dismissed because all the claims are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §

---

[10] Counts VII and IX will have already been dismissed because both claims were improperly pled as derivative claims, but SLUSA preemption provides another basis for dismissing those claims.

78bb(f)(1).  SLUSA provides that a state law claim must be dismissed as completely preempted if: (1)  the lawsuit is a "covered class action"; (2) the suit is based on state law; (3) the claim alleges a misrepresentation or omission of a material fact or act of deception; (4) that is "in connection with the purchase or sale of a covered security." Id.

Plaintiffs do not dispute that their claims meet criteria (1) through (3). (Pl. Br. at 67-70.) first, the putative class size exceeds fifty shareholders, and thus the suit is a "covered class action." See 15 U.S.C. § 78bb(f)(5)(B); Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 298 n. 4 (3d Cir.2005). Second, Counts VI-IX allege state law violations.  Third, mutual fund shares are "covered securities." See 15 U.S.C. § 78bb(f)(5)(E); Kircher v. Putnam Funds Trust, 403 F.3d 478, 481 (7th Cir.2005).

Plaintiffs only dispute whether their claims meet criterion (4), whether the misrepresentation or deception occurred "in connection with the purchase or sale of a security." Plaintiffs allege that they do not meet criterion (4) because they have limited the Class to "all persons or entities who held one or more shares of BlackRock mutual funds" during the class period, and thus do not involve the "purchase or sale of a security."  (Pl. Br. at 67-68.)

In Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294 (3d Cir. 2005), the Court of Appeals for the Third Circuit formulated four "guideposts" for determining whether a scheme is "in connection with" the purchase or sale of securities: (1) whether the "action alleges a fraudulent scheme that coincides with the purchase and sale of securities"; (2) "whether the complaint alleges a material misrepresentation or omission disseminated to the public in a medium upon which a reasonable investor would rely"; (3) "whether the nature of the parties' relationship is such that it necessarily involves the purchase and sale of securities"; and (4)

26

"whether the prayer for relief connects the state law claims to the sale of securities." 398 F.3d at

302 (citations and internal quotation marks omitted).  All four factors suggest that the present

claims were in connection with the purchase or sale of a security and thus are preempted by

SLUSA.

First, the alleged scheme necessarily coincides with the purchase or sale of securities.  In

Rowinski, the court held that a scheme to "systematically misrepresent[] the value of securities to

the investing public in order to 'curry favor with investment banking clients and reap hundreds of

millions of dollars in investment banking fees'" necessarily coincided with the purchase or sale

of securities because, "For this purported scheme to work, investors must purchase the

misrepresented securities."  Id. at 302 (citing SEC v. Zanford, 535 U.S. 813, 825 (2002).  The

court recognized, "Absent purchases by 'duped' investors and a corresponding inflation in the

share price, [the defendant's] biased analysis would fail to benefit its banking clients and, in turn,

would fail to yield hundreds of millions of dollars in investment banking fees." Id. at 302.

In the present case, plaintiffs allege that BlackRock  made improper, and excessive

payments to broker-dealers to induce them to direct clients to BlackRock Funds regardless of the

funds' relative investment quality.  Thus, this scheme depends upon new investors purchasing

shares of the Funds and, like the scheme in Rowinski, necessarily "coincides" with the purchase

or sale of securities. The first factor weighs in favor of SLUSA preemption.

Second, the plaintiffs allege that defendants disseminated  material misrepresentations to

the public in prospectuses, a medium upon which a reasonable investor would rely. See (Compl.

¶¶ 85-98).  See also, In re Lord Abbett Mut. Funds Fee Litig., 407 F.Supp.2d at 628 (finding that

the public dissemination supported dismissal in a case where plaintiffs alleged "numerous

omissions in Fund prospectuses").

Third, the nature of the parties' relationship necessarily involves the purchase or sale of securities. Plaintiffs, like the plaintiffs in Rowinski, argue that this factor does not support SLUSA preemption because the putative class is comprised solely of "holders" of recommended securities. See Rowinski 398 F.3d at 303. The Rowinski court rejected this argument, noting that a class defined as "'[a]ll persons who maintained a Salomon retail brokerage account and who paid any charges[,] commissions or fees to Salomon Smith Barney' . . . [was] not limited to non-purchasers and non-sellers," and it necessarily encompassed claims by customers who purchased or sold securities. Likewise, the present class "of all persons or entities who held one or more shares of BlackRock mutual funds" necessarily includes persons or entities who bought or sold shares during the class period.

Finally, the relief the plaintiffs seek "connects" the state law claims to the purchase of securities.  Here, Plaintiffs request "all" compensatory damages, including the "recovery of all fees paid to BlackRock." (Compl. at 56.)  This relief necessarily encompasses fees incurred in connection with the purchase and sale of securities as the fees BlackRock paid to brokers were in exchange for aggressively marketing the funds.  See In re Franklin Mutual Funds Fee Litig., 388 F.Supp.2d 451, 473 (finding that fees sought as relief encompassed charges incurred in connection with the purchase of securities because "the fees and charges imposed on the funds either precipitated and/or perpetuated the shelf-space arrangements").

Counts VI-IX concern misrepresentations and omissions "in connection with the purchase or sale of a covered security" and are thus preempted by SLUSA.  Accordingly, Counts VI and

VIII will be dismissed.  Though Counts VII and IX have already been dismissed because the claims were mispled as direct claims, the fact that these claims are preempted by SLUSA provides an additional basis for dismissing Counts VII and IX.

IV.    Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss the Consolidated Amended complaint will be **GRANTED**.  Counts I-II and IV-IX will be dismissed with prejudice.  Count III will be dismissed with leave to amend.  An appropriate Order of Court follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

_____
                                                )
In re BLACKROCK MUTUAL FUNDS        )          MASTER FILE: 04 Civ. 164 (TFM)
FEE LITIGATION                              )
_____)

ORDER

AND NOW, this 29th day of March, 2006, in accordance with the foregoing

Memorandum Opinion it is ORDERED, ADJUDGED and DECREED that Defendant's Motion

to Dismiss the Consolidated Amended Complaint is hereby **GRANTED** as follows:

      1.      Counts I-II and IV-IX are **DISMISSED WITH PREJUDICE**.

      2.      Count III is **DISMISSED WITHOUT PREJUDICE** and plaintiffs are granted

leave to amend said Count III within twenty (20) days of this order if they so choose.

BY THE COURT

s/ Terrence F. McVerry
_____United States District Court Judge

cc:

        Alfred G. Yates, Jr., Esquire
        Email: Yateslaw@aol.com
        Gerald Rutledge, Esquire
        Email: yateslaw@aol.com

        Charles J. Piven, Esquire
        Email: piven@pivenlaw.com
        Marshall N. Perkins, Esquire
        Email: perkins@pivenlaw.com

        Steven G. Schulman, Esquire
        Email: sschulman@milbergweiss.com

                Kim E. Levy, Esquire
                Peter E. Seidman, Esquire
                Steven G. Schulman
                Milberg, Weiss, Bershad & Schulman
                One Pennsylvania Plaza
                New York, NY 10119

        Richard A. Maniskas, Esquire
        Email: rmaniskas@sbclasslaw.com
                Marc A. Topaz , Esquire
                Schiffrin & Barroway
                280 King of Prussia Road
                Radnor, PA 19087

        Samuel H. Rudman, Esquire
        Email: srudman@lerachlaw.com

        Daniel H. Tabak, Esquire
        Email: dtabak@stblaw.com

        John J. Kenney, Esquire
        Email: jjk@phunlaw.com

        Nina M. Faber, Esquire
        Email: nfaber@reedsmith.com
        W. Thomas McGough, Jr., Esquire
        Email: tmcgough@reedsmith.com

        Kenneth M. Kramer, Esquire
        Shearman & Sterling
        153 East Fifty-Third Street
        Citicorp Center
        New York, NY 10022